<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| B&C SPEAKERS S.P.A. AND B&C SPEAKERS, NA, LLC,<br><br>       *Plaintiffs*,<br><br><br>       v.<br><br>PRV AUDIO GROUP, INC.,<br><br>       *Defendant*. | Civil No.: 25-cv-3017 (KSH) (JSA)<br><br><br><br>**<u>OPINION</u>** |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

## I.    Introduction

In this action alleging trade dress infringement and related claims, plaintiffs B&C

Speakers S.p.A. ("B&C") and B&C Speakers, NA, LLC ("B&C NA," and with B&C,

"plaintiffs") contend that defendant PRV Audio Group, Inc. ("PRV") has advertised, sold,

marketed, and offered for sale numerous products that infringe plaintiffs' speaker basket design.

Before the Court is defendant's motion to dismiss for failure to state a claim.  The motion is fully

briefed, and the Court decides it without oral argument.

## II.    Background

The complaint alleges as follows.  B&C is an Italian company; B&C NA is its wholly

owned subsidiary and is located in Pompton Plains, New Jersey.  (D.E. 1, Compl. ¶¶ 1-2.)  B&C

describes itself as "one of the largest and most prestigious professional loudspeaker transducer

manufacturers in the world."  (*Id.* ¶ 9.)  Together with B&C NA, it sells multiple speaker

products with "distinctive" designs, which it refers to as the "B&C Speaker Basket Design"

(hereafter, the "Design").  (*Id.* ¶¶ 10, 12, 14.)  "One of B&C's distinctive speaker designs," the

complaint goes on, "is B&C's 12NDL76 speaker, which is shown below and has been sold by

1

B&C Speakers since at least as early as 2005[.]" (*Id.* ¶ 11.)  The picture below followed:



The complaint goes on to describe the Design as including tapering support arms

terminating at a motor mount and evenly spaced oblong holes:

> B&C's unique design . . . includes [1] pairs of tapering and arching support arms [1] that terminate at the magnetic motor mount [2] and extend to the circular front mounting flange [3].  A pattern of ribs [4] and evenly spaced obround holes [5] extend around the mounting flange [3].  A terminal tab [6] is integral to the basket and adjacent to the base basket flange [7].

(*Id.* ¶ 12.)  The following diagram was provided:



Plaintiffs assert that the specific features of the Design are non-functional and

ornamental.  (*Id.* ¶ 13.)  Using the support arms and holes as an example, they contend that while

2

such features "may offer functionality in general, the specific and unique design of these features in the B&C Speaker Basket Design, such as tapering and arched arms and evenly-spaced oblong holes, do not offer any functionality." (*Id.*)

The Design trade dress has, according to Plaintiffs, "been continuously used and marketed for more than eighteen (18) years as being affiliated with B&C," including at trade shows, in brochures and catalogs, in online images, and in industry publications. (*Id.* ¶¶ 15-16.) The B&C products with the Design "have been B&C's best-selling cone speaker products," and they have received industry awards and favorable reviews from an industry publication. (*Id.* ¶¶ 18-19.) On consumers' association of the Design with plaintiffs, the complaint alleges:

> Given B&C's lengthy use of the B&C Speaker Design that extended to multiple products, extensive advertising and promotion including the B&C Speaker Design, industry recognition, and overall fame and purchaser recognition of the B&C Speaker Basket Design, the B&C Speaker Design is recognizable trade dress that serves to identify to purchasers that the speakers originate from or are affiliated with a single source.

(*Id.* ¶ 21.) Moreover, the complaint continues, purchasers "often view a speaker design in making a purchasing decision," providing an example of a website on which a consumer can see the Design in a speaker listed for sale on the site. (*Id.* ¶ 22.) B&C purports to be the "exclusive owner of protected common law trade dress rights in" the Design, and that it has stopped other companies from infringing and unauthorized use of the Design through its efforts at "enforcement and policing." (*Id.* ¶¶ 23-24.)

The exception is the defendant here, PRV, which plaintiffs allege is their competitor "in at least the consumer car audio market." (*Id.* ¶ 25.) PRV has, they continue, "advertised, marketed, offered for sale, and sold" various products that allegedly infringe the Design. (*Id.* ¶ 26.) The complaint offers side-by-side comparisons of various of these and Plaintiffs' speakers. (*Id.* ¶¶ 27-29 & Ex. C.) The parties' respective products are "advertised and sold in the same

trade channels, which include certain websites, retail stores, and trade shows.  (*Id.* ¶¶ 30-32.)

On June 20, 2023, B&C sent a cease and desist letter to PRV requesting that it stop manufacturing or importing a specific PRV speaker, the 18X-2, and sell off its existing inventory within a commercially reasonable time.  (*Id.* ¶ 36.)  PRV nonetheless continued to sell its products.  (*Id.* ¶ 37.)

On April 22, 2025, plaintiffs filed their four-count complaint against PRV, alleging trade dress infringement, false designation of origin, and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), and under New Jersey's trademark infringement statute, N.J.S.A. § 56:3-13.16 (Count II); unfair competition under New Jersey's unfair competition statute, N.J.S.A. § 56:4-1 (Count III); and common law trademark infringement and unfair competition (Count IV).  (D.E. 1.)  PRV has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs have failed to plead, and cannot plead, factual allegations supporting essential elements of their claims, including protectable trade dress (*i.e.*, that the Design is non-functional and distinctive) and a likelihood of consumer confusion between PRV's products and the Design.  (D.E. 20-1, Moving Br.)  PRV further asserts that its speakers come in different designs and different features, but plaintiffs "fail to plead which particular elements of PRV's speaker designs" infringe the claimed trade dress.  (*Id.* at 5.)

In opposing (D.E. 23), plaintiffs argue that the complaint articulates the claimed trade dress with sufficient particularity and adequately pleads that it is ornamental, non-functional and has secondary meaning, and that even if the pleading is deficient, any dismissal should be without prejudice.  PRV replies that plaintiffs' arguments do not overcome the sparsity of the pleaded factual allegations, particularly in describing the claimed trade dress, and that controlling case law requires dismissal here.  (D.E. 25, Reply Br.)

## III.    Standard of Review

To withstand dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must plead a plausible claim for relief, which means the plaintiff has pleaded "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Kalu v. Spalding*, 113 F.4th 311, 324-25 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In conducting that assessment, the well-pled factual allegations are assumed as true and reasonable inferences are drawn in plaintiffs' favor.  *Id.* at 325; *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018)).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are disregarded in determining whether this standard is met.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018) (cleaned up).

## IV.    Discussion

Trademarks connect goods with their sources in the minds of consumers.  *PIM Brands Inc. v. Haribo of Am., Inc.*, 81 F.4th 317, 321 (3d Cir. 2023) ("Trademarks protect buyers and sellers by flagging the goods' source.").[1]  Trade dress is a "subset of trademark" that "protects distinctive choices (like size, shape, and color) that make up 'the overall look of a product.'" *Id.* (quoting *Ezaki Glico*, 986 F.3d at 255).  The Third Circuit has summarized what trade dress is and why it is protectable:

---

[1] Plaintiffs have asserted four claims, and PRV has moved to dismiss all of them.  The parties' briefing, however, focuses on the standards for the Lanham Act claim, and recognizes that the remaining claims are subject to the same arguments.  This Court follows suit, and because (as explained *infra*) the Lanham Act claim cannot proceed as currently pleaded, the remaining claims must similarly be dismissed.  *Accord Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255 (3d Cir. 2021) ("New Jersey's unfair-competition and trademark laws are not significantly different from federal law, so our analysis of [plaintiff's] Lanham Act claims applies equally to dispose of its state-law claims. . . . Following the parties' lead, we focus on federal trademark law.").

> "Trade dress" refers to the design or packaging of a product which serves to identify the product's source.  It is the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique.  The purpose of trade dress protection is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007) (internal citations and quotation marks omitted).  The law's protection of trade dress does not extend to functional features because it "is not intended to create patent-like rights in innovative aspects of product design.  If it did, it could override restrictions on what is patentable and for how long." *Ezaki Glico*, 986 F.3d at 256 (cleaned up).  *See also Shire US Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003) ("The functionality doctrine 'accommodates the twin purposes behind the Lanham Act. It protects the manufacturer (and the consumer) from the copying of those features that signify a product's source (and quality) and encourages competition by preventing one manufacturer from acquiring a monopoly by attempting to trademark those features of a design essential to a successful product of that type.'").

This line-drawing is reflected in the elements necessary to state a claim for trade dress infringement under § 43(a) of the Lanham Act, the federal statute setting forth "the standard for infringement of unregistered trademarks." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014).  A plaintiff asserting such a claim must plead that "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals*, 511 F.3d at 357; 15 U.S.C. § 1125(a)(3) (trade dress plaintiff "has the burden of proving that the matter sought to be protected is not functional").

The plaintiff must also describe the trade dress with specificity; that is, "to articulate the specific elements which comprise its distinct dress." *Fair Wind*, 764 F.3d at 309 (cleaned up). "[T]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list." *Id.* (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed. 2014)). This description should show that the plaintiff is "seek[ing] protection of visual elements of its business" rather than protection of "an unprotectable style, theme or idea." *Id.* (cleaned up).

Plaintiffs point to paragraph 12 of the complaint for this listing of the elements and a drawing of their trade dress. (D.E. 23, Pl.'s Opp. 2, 4-6.) That paragraph, again, reads as follows:

> B&C's unique design . . . includes [1] pairs of tapering and arching support arms [1] that terminate at the magnetic motor mount [2] and extend to the circular front mounting flange [3]. A pattern of ribs [4] and evenly spaced obround holes [5] extend around the mounting flange [3]. A terminal tab [6] is integral to the basket and adjacent to the base basket flange [7]."

(Compl. ¶ 12.) Accepting for the moment that this description is adequate,[2] plaintiffs have a fundamental problem: the complaint fails to plead facts showing that their trade dress is non-functional. As a consequence, dismissal is warranted.

Functionality is analyzed "not at the level of the entire product or type of feature, but at the level of the particular design chosen for feature(s)." *Ezaki Glico*, 986 F.3d at 257. That is, the product as a whole may be functional, but the particular "shape and form" chosen for its features may mean that those features are *not* functional. *Id.*

A feature is "functional" if it is "useful," which can mean the feature is "essential" to the article's use or purpose, or that the feature affects the article's cost or quality. *Ezaki Glico*, 986

---

[2] PRV argues that it is not. (D.E. 20-1, Moving Br. 3; D.E. 25, Reply Br. 3-4, 6-7.)

F.3d at 255, 257. A feature is also "useful" if exclusive use of it "would put competitors at a significant non-reputation-related disadvantage." *Id.* at 257. A feature that is "merely an ornamental, incidental, or arbitrary aspect" of the article does not qualify as "useful." *Id.* Certain types of information about the feature can help determine whether it is "useful" or not—including evidence that a "feature or design makes a product work better"; that the marketing of the product "touts a feature's usefulness"; that a utility patent covers the features; or that the product could only be designed in a few ways (or, on the other hand, that there are "other workable designs"). *Id.* at 258.

A court undertaking this inquiry at the motion to dismiss stage must be able to infer from the pleaded factual allegations that a feature's purpose or operation is aesthetic or ornamental, rather than useful. A case both sides cite, *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380 (E.D. Pa. 2020) (Pratter, J.), is illustrative. There, the product was ballet shoes, and from the complaint allegations and the context supplied in the description of the trade dress, the court could draw reasonable inferences about which aspects of the design choices for the ballet shoes were functional and which were not:

> Certain aspects of the alleged trade dress could be seen as inherently functional (*i.e.*, "the unique identifier number" used to identify the cobbler that inspected the shoes, the placement and orientation of the size and width markings). Even so, other aspects of the trade dress are plausibly inherently aesthetic (*i.e.*, the pink satin trim, white inner sole, stitch patterns, and diamond sole mark)[22]—and thus nonfunctional.
>
> [22] Grishko alleges that the diamond pattern on the sole is not designed for traction or any other functional purpose and is purely aesthetic.

*Id.* at 408-09 & n. 22.

This Court cannot draw similar inferences from the spare allegations in plaintiffs' complaint. Instead, the complaint conclusorily asserts that the Design "does not provide any

functionality to the speaker" and that as an example, "support arms and holes may offer functionality in general," but "tapering and arched arms and evenly-spaced oblong holes do not." (Compl. ¶ 13.)  The purpose of "support arms" as part of a speaker is not apparent, so whether "tapering and arched" arms are a design choice or a function choice is similarly unclear. Contrast this to, for example, the "unique identifier number" on the ballet shoes, that logically could identify a cobbler (functional), or to color choices and stitch patterns for parts of the ballet shoe (which one could reasonably infer to be non-functional).  Simply labeling an element "non-functional" and "ornamental," as plaintiffs' paragraph 13 does, is insufficient here for the Court to reasonably infer why that would be so.[3]

Plaintiffs argue that trade dress "protects distinctive choices (like size, shape, and color)" (D.E. 23, Pls.' Opp. 10 (quoting *PIM Brands*, 81 F.4th at 321)), but it is not apparent from the complaint what aspects or features of the Design *were* a choice, as opposed to necessary for or integral to any similar speaker.  PRV cites an excerpt from Voice Coil, an industry publication, that appears in Exhibit B to the complaint as proof that the Design is functional.  The excerpt describes the frame of a particular B&C speaker as "very much part of the cooling system," and goes on to discuss the six double spokes that are coupled to the ring magnet motor structure, the venting system, pole vent, and vent holes, "which, when taken together, provide substantial air flow throughout the motor structure."  (Compl., Ex. B, at 10 of 26.)[4]  Although the Court does

---

[3] Plaintiffs analogize their allegations to those made in *Azurous, Inc. v. Kennedy Int'l, Inc. ("Azurous II")*, 2025 WL 1502077 (D.N.J. May 27, 2025) (Quraishi, J.), in which a trade dress infringement claim concerning a travel pillow survived a motion to dismiss.  (*See* D.E. 23, Pls.' Opp. 10.)  But the factual allegations there were far more robust and spoke directly to considerations relevant to the functionality analysis.  They included factual assertions, for example, explaining that the identified features did not impact cost or quality and how competitors could offer products with the same function that did not have the features plaintiff had identified as its trade dress.  *See Azurous II*, 2025 WL 1502077, at *6-7.
[4] This pagination refers to the page numbers assigned by the CM/ECF system.

not consider this excerpt for the truth of the statements in it—plaintiffs have relied on it to show how they advertised, not to show the Design's functionality or non-functionality (Compl. ¶ 17)—it does illustrate the dearth of detail in plaintiffs' description of their trade dress if they want to avoid the functionality bar. For example, the complaint simply states that the Design has "obround holes." (Compl. ¶ 12.) It is silent on what they do, or don't do, and why an "obround" shape was chosen. In contrast, the article suggests a purpose by calling them "vent holes." *See Azurous, Inc. v. Kennedy Int'l, Inc.* (*"Azurous I"*), 2024 WL 3219663, at *9 (D.N.J. June 28, 2024) (Quraishi, J.) (taking account of how the plaintiff described its product on its website in considering functionality). The complaint allegations simply do not equip the Court with information that would permit it to reasonably infer that the holes have an aesthetic, rather than useful, purpose.

Plaintiffs' other arguments in opposition are similarly unavailing. That PRV sells other speakers "that do not fully incorporate the [Design]," which they argue shows that "such features are not required" (D.E. 23, Pls.' Opp. 3, 12 (citing Compl. ¶ 35)), does not move the needle because the features included or excluded in those other speakers is left unspecified. That plaintiffs received a European Union Community Design Registration, which they offer as support for a conclusion that the Design is non-functional and ornamental (*see* Compl. ¶ 13 & Ex. A; D.E. 23, Pls.' Opp. 13), is unhelpful as presented; the parties dispute what the existence of that registration indicates and the standards for its issuance, and in any event, the exhibit is entirely in Italian.

Plaintiffs are correct that protectible trade dress may be found in a "combination of functional and non-functional features . . . so long as the non-functional features help make the overall design distinctive and identify its source." (D.E. 23, Pls.' Opp. 13-14 (quoting *Ezaki*

10

*Glico*, 986 F.3d at 258).)  But what plaintiffs have pleaded still does not satisfy that standard.  If the design chosen, considered in its entirety, "both promotes a brand and also 'makes a product work better,' it is functional and unprotectable."  *PIM Brands*, 81 F.4th at 321.  The complaint allegations simply say, in essence, that this isn't the case, without showing why.  Without that piece, the claims cannot proceed.[5]

Dismissal will, however, be without prejudice.  There is no indication that an amendment adding the detail currently missing would be futile, or that another ground to deny amendment exists.  *EBIN New York, Inc. v. KISS Nail Prods., Inc.*, 2024 WL 1328029, at *9 (D.N.J. Mar. 28, 2024) (Salas, J.) (dismissing without prejudice); *see also Oxford House, Inc. v. Twp. of N. Bergen*, 158 F.4th 486, 495-96 (3d Cir. 2025) (reversing denial of leave to amend).  The Court also observes that the parties' motion practice was directed to the original complaint, which the Court had not previously ruled on.  *See EBIN*, 2024 WL 1328029, at *8 ("Plaintiff has thus far not amended its Complaint and this Opinion is the first judicial scrutiny of its allegations.").

**V.     Conclusion**

The motion to dismiss is granted, without prejudice to plaintiffs filing an amended complaint within 14 days.  An appropriate order will issue.

/s/ Katharine S. Hayden

Date: March 4, 2026                        Katharine S. Hayden, U.S.D.J.

---

[5] As such, the court need not assess at this point whether plaintiffs have adequately pleaded secondary meaning or likelihood of source confusion.